# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELVIA YOLANDA MONTANO, <br><br> Defendant. | Case No. 1:12-cv-00738-AWI-SAB <br><br> **FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE PARTIALLY GRANTED** <br><br> (ECF NO. 14) |

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed a motion requesting entry of default judgment on February 7, 2013.  (ECF No. 14.)  This matter was referred to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 303.

The hearing on Plaintiff's motion took place on April 10, 2013.  For the reasons set forth below, the Court recommends that Plaintiff's motion be partially granted and judgment be entered in favor of Plaintiff in the amount of $7,200.00.

## I.

## BACKGROUND

Plaintiff filed the complaint in this matter on May 4, 2012.  (ECF No. 1.)  Plaintiff's complaint alleges that Defendant Elvia Yolanda Montano ("Defendant") is the owner and/or operator of Papa O's Pizza, a.k.a. Alto Kalibre, which is located at 254 White Lane, Bakersfield,

1

1 California 93307.  (Compl. ¶ 7.)

2 Plaintiff is the exclusive nationwide commercial distributor of the "Manny Pacquiao v. Shane Mosley, WBO Welterweight Championship Fight Program" ("the Program") which was telecast on Saturday, May 7, 2011.  (Compl. ¶ 14.)  Plaintiff alleges that Defendant illegally intercepted and displayed the Program at her commercial establishment.  (Compl. ¶ 17.)  Plaintiff contends that Defendant's actions violated 47 U.S.C. § 605 and 47 U.S.C. § 553.  (Compl. ¶¶ 13-27.)   Plaintiff also asserts a conversion claim and a claim under California Business and Professions Code § 17200 against Defendant.  (Compl. ¶¶ 28-41.)

Defendant failed to file a responsive pleading.  On November 30, 2012, Plaintiff requested an entry of default against Defendant, which the Clerk of the Court entered the same day.  (ECF Nos. 11-12.)  On February 7, 2013, Plaintiff filed the present motion for default judgment.  (ECF No. 14.)

Plaintiff's investigator submitted a form affidavit pertaining to the alleged illegal telecast.  (ECF No. 14-3.)  Gilbert Tate was at Papa O's Pizza on May 7, 2011 at 8:15 p.m.  (Decl. of Affiant, pg. 2.)  Mr. Tate did not pay a cover charge to get in.  (Id.)  Mr. Tate indicated that he "observed 4 television sets," but described them as "2 flat & a projector 60'" so there is some ambiguity as to whether there were three televisions or four.  (Id.)  Mr. Tate further observed the televisions broadcasting a boxing match between "Wilfredo Vasquez" and "Jr. V. Jorge Arce."[1]  (Id.)  Mr. Tate did not fill out the portions of the affidavit pertaining to whether a cable box was visible, whether a channel number was visible, whether the establishment had a satellite dish, and whether there were apartments adjacent to or above the establishment.  (Id.)  Mr. Tate described the capacity of the establishment as approximately 150 people and had counted 80-90 people at the establishment while he was there.  (Id. at pg. 2-3.)  Mr. Tate wrote that he left at

---

[1] Mr. Tate's recollection and description of the fight is somewhat troubling, which is discussed in more detail below. Briefly, the form affidavit had blanks which Mr. Tate filled out in handwriting.  There were two blanks for the names of the boxers, which Mr. Tate identified as "Wilfredo Vasquez" and "Jr. V. Jorge Arce."  The Court notes that media accounts identify a match between Wilfredo Vazquez, Jr. (last name spelled with a 'z' and not an 's') and Jorge Arce as one of the undercard fights on May 7, 2011.  See Meredith Lyons, Jorge Arce vs. Wilfredo Vazquez Jr. Recap, Examiner.com, May 7, 2011, http://www.examiner.cvasom/article/jorge-arce-vs-wilfredo-vazquez-jr-recap.
Presumably, the fight was titled as "Wilfredo Vazquez Jr. v. Jorge Arcee," which Mr. Tate erroneously interpreted as involving "Wilfredo Vasquez" on one hand and "Jr. V. Jorge Arcee" on the other.

1 approximately 8:18 p.m., which indicates that he was there for three minutes. (Id. at pg. 3.)

2 The hearing on Plaintiff's motion for default judgment took place on April 10, 2013. At the hearing, Plaintiff's counsel argued that a higher measure of damages is justified to deter signal pirates. Plaintiff's counsel also acknowledged that he mistakenly failed to submit evidence of Plaintiff's actual damages and the Court ordered Plaintiff to submit such evidence within seven days. On April 15, 2013, Plaintiff filed a declaration from Joseph M. Gagliardi, Plaintiff's president, describing Plaintiff's damages. (ECF No. 18.) Mr. Gagliardi stated that the commercial sublicense fee for a commercial establishment with a maximum fire code occupancy of 150 persons would have been $6,200.00. (Pl.'s Aff. in Supp. of Pl.'s App. for Def. J. by the Court ¶ 8.)

## II.

## LEGAL STANDARDS FOR DEFAULT JUDGMENT

Entry of default judgment is governed by Federal Rule of Civil Procedure 55(b), which states, in pertinent part:

> (2) **By the Court.** In all other cases[2], the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Upon entry of default, the complaint's factual allegations regarding liability are taken as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1235 (E.D. Cal. 2008). However, the complaint's factual allegations relating to the amount of damages are not taken as true. Geddes, 559 F.2d at 560. Accordingly,

---

[2] Rule 55(b)(1) governs entry of default judgment by the clerk in cases where the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, which does not apply in this case.

the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp., 549 F. Supp. 2d at 1236.  Per Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Entry of default judgment is committed to the Court's discretion.  Eithel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).

## III.

## DISCUSSION

Plaintiff seeks default judgment totaling $116,200.00.  (Decl. of Thomas P. Riley in Supp. of Pl.'s App. for Def. J. by the Court ("Riley Decl.") ¶ 7.)  Plaintiff only seeks to recover relief on his 47 U.S.C. § 605 claim and his conversion claim.  (Riley Decl. ¶¶ 6-7.)

**A.    Plaintiff's Request for Statutory Damages Under 47 U.S.C. § 605**

Plaintiff seeks the maximum amount ($10,000.00) in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (hereinafter referred to as "(C)(i)(II) Damages").  (Mem. of P. & A. in Supp. of Pl.'s Appl. for Def. J. by the Court ("Pl.'s MPA") 8:1-14:13.)  Plaintiff also seeks the maximum amount ($100,000.00) in statutory "enhanced[3]" damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) (hereinafter referred to as "(C)(ii) Enhanced Damages").[4]  (Pl.'s MPA 14:14-20:1.)

Both (C)(i)(II) Damages and (C)(ii) Enhanced Damages stem from violations of 47 U.S.C. § 605(a).  Section 605(a) prohibits the unauthorized interception and distribution of communications.  47 U.S.C. § 605(a).  "[L]iability under section 605 requires proof that a defendant has (1) intercepted or aided the interception of, and (2) divulged or published or aided

---

[3] Although the term "enhanced" does not appear anywhere in the statute, courts have characterized the damages under Section 605(e)(3)(C)(ii) as "enhanced" damages.  See, e.g., Joe Hand Promotions, Inc. v. Streshly, 655 F. Supp. 2d 1136 (S.D. Cal. 2009); Kingvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196 (N.D. Cal. 2000). Accordingly, the Court will use the same term when referencing damages under this section.

[4] In a prior case, J&J Sports Productions, Inc. v. Richard Jesus Garcia, Case No. 1:12-cv-01510-LJO-SAB, this Court admonished Plaintiff and Plaintiff's counsel for requesting the maximum amount of statutory penalties when such a request did not appear to have any justification based upon the circumstances specific to the case and the evidence presented.  Since the Court's admonishment occurred before Plaintiff filed the present motion for default judgment in this action, the Court will not take any action against Plaintiff for again requesting maximum statutory penalties with little factual or legal basis for doing so.  However, Plaintiff is again forewarned that future requests for maximum statutory penalties that are not justified by the facts of the case will not be entertained by this Court.

the divulging or publishing of, a communication transmitted by the plaintiff." California Satellite Systems v. Seimon, 767 F.2d 1364, 1366. (9th Cir. 1985). Plaintiff's complaint states a claim for a violation of Section 605. See J and J Sports Productions v. Coyne, 857 F. Supp. 2d 909, 914 (N.D. Cal. 2012) (commercial establishment violated Section 605 by broadcasting pay-per-view boxing match without authorization).

1.  Damages Under (C)(i)(II)

Plaintiff requests the maximum amount of statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), which states:

> (3)(A)  Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.
> ...
> (C) (i)  Damages awarded by any court under this section shall be computed, at the election of the aggrieved party[5], in accordance with either of the following subclauses;
> ...
> (II)  the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just....

Courts have taken several different approaches when establishing the appropriate amount of (C)(i)(II) Damages. In Kingsvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000), the Court awarded the statutory minimum of $1,000 and reasoned that "distributors should not be overcompensated and statutory awards should be proportional to the violation." In J & J Sports Productions, Inc. v. Betancourt, No. 08CV937 JLS (POR), 2009 WL 3416431, at *4 (S.D. Cal. Oct. 20, 2009), the Court considered the statute's policy of deterring future violations and looked at whether the circumstances were egregious or unusual.

The facts here are similar to the facts in Backman. In Backman, the Court awarded the statutory minimum of $1,000 in (C)(i)(II) Damages, plus compensatory damages calculated from the plaintiff's actual losses. Backman, 102 F. Supp. 2d at 1198-99. In so doing, the court reasoned that there was no evidence of significant commercial advantage or private financial

---

[5] The alternative method of calculating damages, which was not elected by Plaintiff, is the "actual damages suffered ... as a result of the violation." 47 U.S.C. § 605(e)(3)(C)(i)(I).

5

gain. Id. at 1198. The court further noted that "there are no allegations of ... repeat behavior, and no evidence of otherwise egregious willfulness that would warrant harsh punitive damages." Id. at 1199. The same holds true in this case. See discussion, infra, Part III.A.2. Accordingly, the Court will award the minimum $1,000.00 in (C)(i)(II) Damages.

　　　　2.　　"Enhanced" Damages Under (C)(ii)

Plaintiff requests the maximum amount of "enhanced" statutory damages available under 47 U.S.C. § 605(e)(3)(C)(ii), which states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

The (C)(ii) Enhanced Damages are analogous to punitive damages, as they are awarded at the Court's discretion in cases where a defendant's actions are willful and for the purpose of financial gain. See BMW of North America, Inc. v. Gore, 517 U.S. 559, 580 (1996) (purpose of punitive damages is to punish and deter egregiously improper conduct). Factors considered by courts in assessing (C)(ii) Enhanced Damages include (1) repeat violations, (2) the extent of the unlawful monetary gains, (3) actual damages to the plaintiff, (4) the defendant's advertising for the broadcast of the event, (5) charging cover to enter the establishment to view the event, or (6) charging a premium for food or drinks during the event. See, e.g., Kingsvision Pay-Per-View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008); Kingsvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000).

Determining whether Defendant's actions were willful or egregious is hampered because Plaintiff filed a brief with minimal analysis of the facts specific to this case. Federal courts have noted similar briefs from Plaintiff with minimal factual analyses. See, e.g., J & J Sports Productions, Inc. v. Lozano, No. C 12-01247 WHA, 2012 WL 3660351 (N.D. Cal. Aug. 24, 2012) ("This boilerplate language is identical to reasoning given by plaintiff in a previous default judgment action..."); J & J Sports Productions, Inc. v. Ro, No. C 09-02860 WHA, 2010 WL 668065, at *5 (N.D. Cal. Feb. 19, 2010) ("The paperwork filed has not been directed at the facts

6

of this case."); J & J Sports Productions, Inc. v. Cardoze, No. C 09-05683 WHA, 2010 WL 2757106, at *4 (N.D. Cal. Jul. 9, 2010) ("plaintiff's memorandum...largely lacks arguments about the specific facts of the suit..."). This Court noted the minimal legal analysis in Plaintiff's briefs on a prior occasion as well. J & J Sports Productions, Inc. v. Garcia, No. 1:12-cv-01510-LJO-SAB, 2013 WL 636707, at *4 (E.D. Cal. Feb. 15, 2013).

Several factors weigh against the amount of damages requested by Plaintiff. First, Plaintiff did not submit evidence pertaining to the egregiousness of Plaintiff's violation. As recognized in Streshly, there are varying degrees of telecommunications piracy. Streshly, 655 F. Supp. 2d at 1139. Here, the affidavit of Mr. Tate in support of Plaintiff's motion is somewhat evasive because Mr. Tate failed to provide responses to questions on the form affidavit that pertained to the method of piracy. Mr. Tate did not indicate whether a cable box was visible, whether a channel number appeared on the box, whether a satellite dish was visible, or whether apartments or other residential buildings were adjacent to the establishment.

This issue is particularly relevant in this case because there is some evidence that Defendant's actions were not willful and were not for the purposes of direct or indirect financial gain--required showings to qualify for (C)(ii) Enhanced Damages. See 47 U.S.C. § 605(e)(3)(C)(ii). Mr. Tate was evidently asked to leave by a "Hispanic male who advised [Plaintiff] to exit [because] it was a party." (Decl. of Affiant, pg. 2.) Elsewhere, Mr. Tate writes that "[he] started to video tape [and] was asked to leave." (Decl. of Affiant, pg. 2.) Mr. Tate does not provide any more details as to why he was asked to leave but two possible inferences from his affidavit are (1) the establishment was hosting a private party and Mr. Tate was not invited, or (2) the people at the establishment did not want Plaintiff video-taping what was going on. Had it been the former, it raises the question as to whether Defendant's piracy was "for purposes of direct or indirect commercial advantage or private financial gain" within the meaning of 47 U.S.C. § 605(e)(3)(C)(ii). Notably, Mr. Tate indicated that he did not order any drinks or food that night. Had Defendant held a private function for friends/family/invitees without charging cover, without charging for food and drinks and without receiving any other direct or indirect financial benefit, (C)(ii) Enhanced Damages would not be available. On the other hand, if Mr.

Tate was asked to leave because the people at the establishment recognized him as a private investigator video-taping their acts of piracy, it would support the conclusion that Defendant's actions were willful. Plaintiff could have submitted a more detailed affidavit from Mr. Tate or presented Mr. Tate at the default judgment hearing to provide testimony pertaining to the aforementioned issues. Alternatively, Plaintiff could have conducted a more thorough investigation. The Court is not inclined to award enhanced statutory damages in cases where the Plaintiff omits facts relevant to the egregiousness analysis and declines to conduct an investigation that would reveal the level of egregiousness.

The Court is also troubled by errata in the affidavit of Mr. Tate. As noted above, Mr. Tate stated that he observed the undercard fight, "Wilfredo Vazquez Jr. v. Jorge Arce," being displayed at Defendant's establishment, yet misidentified the fighters as "Wilfredo Vasquez" and "Jr. V. Jorge Arce." (Decl. of Affiant, pg. 2.) The error in Mr. Tate's affidavit demonstrates a lack of familiarity with boxing in general (the inability to correctly parse out the participants in a match entitled "Wilfredo Vazquez Jr. v. Jorge Arce") as well as a lack of familiarity with the participants in this particular match (not knowing Jorge Arce's correct name and mis-spelling Vazquez's last name). Both these factors raise questions about Mr. Tate's ability to accurately identify and/or recollect the programming displayed on the televisions at the establishment.

Additionally, Mr. Tate wrote that he was at Defendant's establishment between 8:15 p.m. and 8:18 p.m. (Decl. of Affiant, pg. 2-3.) During this brief three minute span, Mr. Tate was able to identify the number of televisions in the establishment (albeit with some ambiguity over whether there were three televisions or four), identify the program displayed on the television, describe the layout of the establishment, and perform three estimated head counts of 80-90 people inside the establishment. (Decl. of Affiant, pg. 2-3.) Mr. Tate was also able to record the license plates from six vehicles at the establishment. (Decl. of Affiant, pg. 3.) Plaintiff was also approached by someone at the establishment and asked to leave. Given the short amount of time Mr. Tate spent at the establishment and the errata throughout his affidavit, the Court questions the affidavit's accuracy. Mr. Tate's estimates regarding the number of people at the establishment is particularly questionable, as it is clear Mr. Tate did not have enough time to perform three

thorough head counts in three minutes, in addition to observing all the other details Mr. Tate recorded during his visit.

The Court is also disturbed that Plaintiff requests the maximum allowable penalty despite the fact that the facts here do not justify such an award. The cases cited by Plaintiff make clear that the factors relevant in assessing the amount of (C)(ii) Enhanced Damages do not exist here. The factors that typically justify a larger enhanced aware either do not exist here, or Plaintiff did not investigate those factors. There is no suggestion that Defendant is a repeat violator. There is no evidence of the extent of Defendant's unlawful monetary gains. Although Defendant's investigator counted 80-90 patrons during the broadcast, there is no evidence that this number was attributable to the Program. Notably, Defendant could have sent its investigator back to the same establishment to perform headcounts at the same time on the same day of the week on days when there was no illegal broadcast for comparative purposes, but Defendant chose not to do so. There is no evidence of any advertising for the illegal broadcast. There was no cover charge or evidence of any premium charged for food or drinks during the broadcast. In fact, there is no evidence that Defendant was charging anything for food or drinks, as Mr. Tate's affidavit states that Mr. Tate did not attempt to order food and drink and there is some indication that Mr. Tate was kicked out of the establishment because it was hosting a private party.

Given the lack of evidence that Defendant profited, directly or indirectly, from the allegedly illegal display of the Program and Plaintiff's failure to present more detailed evidence or conduct a more thorough investigation, the Court finds that Plaintiff failed to carry its burden in demonstrating that (C)(ii) Enhanced Damages are proper. Accordingly, the Court will recommend that Plaintiff's request for $100,000.00 in (C)(ii) Enhanced Damages be denied.

At the hearing, Plaintiff argued that larger damage awards are justified due to the costs associated with investigating and suing signal pirates. While the Court understands Plaintiff's economic arguments and the fact that piracy will not be deterred if offenders are required to only pay license fees in the small fraction of cases where they are caught pirating broadcasts, the Court is nonetheless constrained by the plain language of the statute and is authorized to impose (C)(ii) Enhanced Damages in situations where "the violation was committed willfully and for purposes

9

of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). As discussed above, there is insufficient evidence that Defendant's actions were committed willfully for purposes of commercial advantage. Accordingly, Plaintiff has not demonstrated that (C)(ii) Enhanced Damages are appropriate here.

### B. Plaintiff's Request for Conversion Damages

Plaintiff seeks $6,200.00 in damages for conversion. (Pl.'s MPA 20:2-9.) Under California law, the elements for the tort of conversion are: (1) ownership or right to possession of property, (2) wrongful disposition of the property right of another, and (3) damages. Don King Productions/Kingsvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995). Wrongful interception of television broadcasts can constitute conversion. Id.

Plaintiff submitted evidence demonstrating that Defendant would have paid $6,200.00 to Plaintiff if Defendant lawfully obtained the license to broadcast the Program at his restaurant. (Pl.'s Aff. in Supp. of Pl.'s App. for Def. J. by the Court ¶ 8.) Accordingly, the Court finds that $6,200.00 is an appropriate damage award for Plaintiff's conversion claim.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that Plaintiff's motion for default judgment be PARTIALLY GRANTED and that judgment be entered in favor of Plaintiff and against Defendant in the total amount of $7,200.00, representing (C)(i)(II) Damages. The Court recommends that Plaintiff's request for (C)(ii) Enhanced Damages and conversion damages be denied.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections

1  within the specified time may constitute a waiver of the right to appeal the District Court's order.
2  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **April 17, 2013**

UNITED STATES MAGISTRATE JUDGE